UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| BEN THOMAS, an individual, and LINDA FERRIS, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>BOB and KELLY THOMAS, husband and wife,<br><br>Defendants. | Case No.: 1:14-cv-00131-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' (1) RULE 12(b)(6) MOTION TO DISMISS DAMAGE CLAIMS; (2) RULE 12(b)(7) MOTION TO DISMISS DAMAGE CLAIMS; AND (3) RULE 12(b)(1) MOTION TO DISMISS CLAIMS FOR DISSOLUTION OF PARTNERSHIP, WIND-UP, AND SETTLEMENT OF PARTNERSHIP ACCOUNTS, AND CONSTRUCTIVE TRUST**<br><br>**(Docket No. 6)** |

Now pending before the Court is Defendants' (1) Rule 12(b)(6) Motion to Dismiss Damage Claims; (2) Rule 12(b)(7) Motion to Dismiss Damage Claims; and (3) Rule 12(b)(1) Motion to Dismiss Claims for Dissolution of Partnership, Wind-Up, and Settlement of Partnership Accounts, and Constructive Trust (Docket No. 6). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order:

## I. BACKGROUND[1]

1. Plaintiffs Ben Thomas and Linda Ferris (collectively "Plaintiffs") and Defendants Bob Thomas and Kelly Thomas (collectively "Defendants") are partners in the Thomas Brothers

---

[1] For the purposes of Defendants' motions only, this "Background" section accepts as true the factual allegations raised in Plaintiffs' Complaint. *See infra*.

**MEMORANDUM DECISION AND ORDER - 1**

Ranch partnership (the "Partnership"). *See* Compl., ¶ 7 (Docket No. 1). The Partnership has no partnership agreement. *See id.* at ¶ 8.

2. The Partnership owns a substantial ranch in Oreana, Idaho. *See id.* at ¶ 9. The Defendants live on the ranch with their adult sons, operating a separate cattle grazing operation. *See id.* at ¶¶ 10-11. Plaintiff Ben Thomas lives in Woodland, Washington; Plaintiff Linda Ferris lives in Palmer, Alaska. *See id.* at ¶¶ 1-2.

3. According to Plaintiffs, Defendant Bob Thomas "makes decisions regarding the [P]artnership, and does not allow or accept oversight regarding his decisions" which, in turn, alienates Plaintiffs from the Partnership's business. *Id.* at ¶¶ 12-13. Plaintiffs contend that "[t]his alienation has allowed [Defendants] to violate their duties to the [P]artnership through allowing the use of [P]artnership property to operate other cattle grazing operations and as a personal residence and source of funds." *Id.* at ¶ 14. For example:

   a. Defendants "have built their personal residence on the ranch property and have not compensated the [P]artnership for their use." *Id.* at ¶ 15.

   b. Defendant Bob Thomas "has denied access to the ranch property and the books of the partnership, because [Plaintiffs] were unwilling to sign a personal guaranty for additional financing." *Id.* at ¶ 16.

   c. Defendant Bob Thomas "increased the [P]artnership's line of credit significantly over the last year, with no input or consent from [Plaintiffs]." Plaintiffs believe that "this line of credit supports [Defendants'] lifestyle on the ranch, and the separate grazing operation, rather than the [Partnership]." *Id.* at ¶¶ 17-18.

4. Plaintiffs claim to have put money into the Partnership throughout its existence. *See id.* at ¶ 20.

**MEMORANDUM DECISION AND ORDER - 2**

5. The Partnership turned a profit for the past four to five years, but no money has been paid to Plaintiffs. *See id*. at ¶ 21.

6. The parties dispute the best use of the Partnership's real property – Plaintiffs "believe it could be put to better use as vacation property or hunting grounds in addition other valuable uses," while Defendants "believe it should be continued to be used for their cattle gazing operation and personal residence." *Id*. at ¶¶ 22-24. Plaintiffs "believe that to continue to use the ranch for cattle grazing and as [Defendants'] residence would be to commit waste upon the property." *Id*. at ¶ 25. Plaintiffs submit that "there is a clear conflict between that which is best for the [P]artnership and that which most benefits [Defendants] and their family." *Id*. at ¶ 26.

7. Plaintiffs believe that the total value of the Partnership, minus liabilities, is in excess of $4.6 million. *See id*. at ¶ 27.

8. Through this action, Plaintiffs assert the following claims: (1) Dissolution of Partnership, Wind-Up, and Settlement of Partnership Accounts (Count I); (2) Violation of Statutory Duties/Breach of Fiduciary Duty (Count II); (3) Conversion of Partnership Property (Count III); (4) Unjust Enrichment (Count IV); (5) Constructive Trust (Count V); (6) Trespass to Partnership Realty (Count VI). *See id*. at ¶¶ 28-50.

9. Defendants now move to dismiss Plaintiffs' Complaint, arguing that (1) certain of Plaintiffs' causes of action (identified by Defendants as "damage claims") are unaccompanied by sufficiently-detailed allegations and should be dismissed for failure to state a claim, putting into question the amount-in-controversy requirement for subject matter jurisdiction; and (2) the Partnership – not Plaintiffs – is the only party that can bring the damage claims, and the

Partnership's corresponding joinder in the action as a plaintiff would destroy complete diversity, leaving this Court without subject matter jurisdiction. *See* Mem. in Supp. of Mot. to Dismiss, pp. 2-10 (Docket No. 7).

## II. DISCUSSION

### A. Legal Standards

#### 1. FRCP 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

FRCP 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by an FRCP 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. When reviewing a complaint under this Rule, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell*, 550 U.S. 544 at 555. In other words, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility

**MEMORANDUM DECISION AND ORDER - 4**

standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissal for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether the plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

    2.    <u>FRCP 12(b)(7): Failure to Join a Party Under FRCP 19</u>

FRCP 19, which governs the compulsory joinder of parties, presents a three-step inquiry. "First, the court must determine whether a nonparty should be joined under [FRCP] 19(a)." *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) (internal quotation marks omitted). Under FRCP 19(a), a party is "required" if:

    (A)    in that person's absence, the court cannot accord complete relief among existing parties; or

    (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

        (i)    as a practical matter impair or impede the person's ability to protect the interest; or

>   (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Fed. R. Civ. P. 19(a)(1).

Second, if the nonparty (or "absentee") is required and should be joined, the court must determine if it is feasible to do so. *See Peabody*, 610 F.3d at 1078.

Finally, "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The factors under FRCP 19(b) to determine whether the party is indispensable are: (1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder, i.e., whether there exists an alternative forum. *See* Fed. R. Civ. P. 19(b)(1-4). "There is no prescribed formula for determining in every case whether a person is an indispensable party." *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 n.14 (1968). To the contrary, "[FRCP] 19(b) requires the district court to analyze various equitable considerations within the context of particular litigation, rather than to decide a purely legal issue." *Walsh v. Centeio*, 692 F.2d 1239, 1242 (9th Cir. 1982).

If the threshold requirements of FRCP 19(a) are not met, an FRCP 19(b) inquiry is unnecessary. *See Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990). The movant bears the burden of proof as to both parts of the analysis. *See* 7 Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 3d § 1609 at 129. A "dismissal for failure to join an indispensable party should only be ordered where the movant has carried the burden of producing evidence which

**MEMORANDUM DECISION AND ORDER - 6**

shows the nature of the interest possessed by the absentee and that protection of that interest will be impaired by the absence." *Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp.*, 92 F. Supp. 2d 8, 14 (D. Puerto Rico 2000).

**B.      This Court Has Subject Matter Jurisdiction Over Plaintiffs' Claims**

Federal courts have original jurisdiction over civil actions that either (1) arise under federal law ("federal question jurisdiction"), or (2) involve claims for more than $75,000 between parties of diverse citizenship ("diversity jurisdiction"). *See* 28 U.S.C. §§ 1331, 1332(a). Defendants' Motion to Dismiss seeks to persuade the Court that there is no subject matter jurisdiction over the entirety of Plaintiffs' claims due to a lack of diversity jurisdiction (there is no dispute that Plaintiffs' claims do not implicate federal question jurisdiction).

Defendants raise two arguments. First, that the amount in controversy is not met because the claims that seek money damages (the "damage claims") fail to state a claim owing to the absence of particularized allegations – *i.e.*, that, without these claims, there is no dollar amount that is in controversy, let alone the requisite $75,000 jurisdictional amount in controversy. Second, that the Partnership itself is a necessary and indispensable party, which if added as a plaintiff to the action would destroy diversity of citizenship between the parties. Though these arguments may have traction in limited respects, they do not compel dismissal of Plaintiffs' Complaint for lack of subject matter jurisdiction.

      1.      <u>Plaintiffs Have Sufficiently Alleged Diversity Jurisdiction as to the Amount in Controversy Requirement</u>

According to Defendants, of the six causes of action identified within Plaintiffs' Complaint, four are damage claims: (1) Violation of Statutory Duties/Breach of Fiduciary Duty (Count II); (2) Conversion of Partnership Property (Count III); (3) Unjust Enrichment (Count IV); and (4) Trespass to Partnership Realty (Count VII). *See* Mem. in Supp. of Mot. to Dismiss,

**MEMORANDUM DECISION AND ORDER - 7**

p. 5 (Docket No. 7). Defendants contend that Plaintiffs bring these damage claims so that they can dissolve and wind up the Partnership in federal court rather than in the state district court of the county where the Partnership's ranch is actually located. *See id*. at p. 2. In other words, Defendants hint that Plaintiffs' damage claims are a contrivance to implicate diversity jurisdiction. *See id*. (" . . . Plaintiffs have alleged a number of damage claims, and based on this assert that the Court has subject matter jurisdiction over the dispute by virtue of diversity of the parties and the allegation of a sufficient amount of damages. Absent the damage claims, the Court would not have subject matter jurisdiction."). Each of the damage claims fails to meet FRCP 8(a)(2)'s pleading standards, according to Defendants, and therefore should be dismissed under FRCP 12(b)(6), which in turn would deprive this Court of subject matter jurisdiction due to the absence of the required amount in controversy. These damage claims are addressed below.

Under Idaho's Revised Uniform Partnership Act ("RUPA"), partners owe each other (and the partnership itself) a number of statutory duties, including:

- using or possessing partnership property only on behalf of the partnership;

- allowing each partner equal rights in the management and conduct of the partnership business;

- requiring that the partnership provide partners access to the partnership's books and records;

- accounting for and holding in trust benefits derived from the use of partnership property;

- refraining from dealing with the partnership as or on behalf of a party having an interest adverse to the partnership;

**MEMORANDUM DECISION AND ORDER - 8**

- refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law; and

- discharging duties and exercising any rights consistently with the obligation of good faith and fair dealing.

*See, e.g.*, I.C. §§ 53-3-401(f), (g), 403(b), 404(b)(1), (2), (c), (d). In their Complaint, Plaintiffs allege that, in violation of the above-referenced duties, Defendants have:

- used the ranch to operate a separate cattle grazing business;

- made decisions regarding the Partnership without allowing or accepting oversight as to those decisions;

- alienated Plaintiffs from the Partnership business;

- built their personal residence on the ranch property without compensating the Partnership;

- denied access to the ranch property and the Partnership's books because Plaintiffs were unwilling to sign a personal guaranty for additional financing;

- significantly increased the Partnership's line of credit to support Defendants' lifestyle and the separate cattle grazing operation, without Plaintiffs' consent or input; and

- generally committed waste upon the Partnership's property.

*See* Compl., ¶¶ 11, 14-18, 24-26 (Docket No. 1); *see also* Opp. to Mot. to Dismiss, pp. 4-7 (Docket No. 10). Plaintiffs further allege that Defendants' conduct has caused damage in excess of $75,000, considering that the Partnership itself is valued in excess of $4.6 million. *See id.* at ¶¶ 27, 36.[2] With such statutory authority and allegations in mind, it cannot be said (as

---

[2] Where the plaintiff originally files in federal court, "the amount in controversy is determined from the face of the pleadings." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (citing *Crum v. Circus Circus Enter.*, 231 F.3d 1129, 1131 (9th Cir. 2000)). The amount in controversy alleged by the party seeking to invoke diversity jurisdiction is controlling, so long as the claim is made in good faith. *See id.* "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (internal citation omitted). This "legal certainty" standard means a

**MEMORANDUM DECISION AND ORDER - 9**

Defendants do in their briefing) that Plaintiffs' claim for violation of statutory duties/breach of fiduciary duty "does not identify exactly what statutory duties were violated, how the 'actions' constitute violations of a duty, and exactly what damages resulted." Mem. in Supp. of Mot. to Dismiss, p. 8 (Docket No. 7). There is always room for more detail, to be sure; however the Rules "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiffs' Complaint contains such a plausible claim, putting Defendants on fair notice of the alleged violation of statutory duties/breach of fiduciary duty.[3] Summary judgment proceedings may test the claim, but that is a different template. On this record, Defendant's Motion to Dismiss is denied.[4]

Practically speaking, because Plaintiffs have stated a claim for violation of statutory duties/breach of fiduciary duty along with corresponding damages in excess of $75,000, any

---

federal court has subject matter jurisdiction unless "upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." *Id*. (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)). Given the Partnership's valuation in excess of $4.6 million, it does not obviously offend the Court's sensibilities that any damages resulting from Defendants' alleged violation of statutory duties/breach of fiduciary duty (or, even, conversion, unjust enrichment, and trespass (*see infra*)) exceeds $75,000.

[3] Defendants' reliance on *Morningstar Holding Corp. v. G2, LLC*, 2011 WL 864300 (D. Idaho 2011) is misplaced. *See* Mem. in Supp. of Mot. to Dismiss, pp. 7-8 (Docket No. 7). There, the breach of fiduciary duty claim was dismissed in large part due to the uncertainties in Idaho law regarding the fiduciary duties that a power of attorney created at common law. *See id*. at *9. Here, there are no such uncertainties when considering RUPA's explicit statutory authority.

[4] Defendants remark throughout their briefing that Plaintiffs were aware of Defendants' allegedly offensive conduct. *See, e.g.*, Mem. in Supp. of Mot. to Dismiss, p. 3 (Docket No. 7) ("Ben and Linda make no allegation that the residence was built without their knowledge or consent . . . ."). Even though courts may address affirmative defenses at the motion to dismiss stage where it is "obvious on the face of a complaint" – e.g., statute of limitations – Defendants' potential and fact-intensive defense here cannot prevent Plaintiffs' claim before it even begins. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ("[P]laintiffs ordinarily need not plead on the subject of an anticipated affirmative defense.") (internal quotation marks omitted).

argument that Plaintiffs' *entire* Complaint should be dismissed for lack of diversity jurisdiction by reason of an insufficient amount in controversy (which arguably may have been the primary goal of Defendants' Motion to Dismiss, *see supra*) is overstated and misses the point. Even so, for housekeeping purposes, the undersigned will examine the allegations supporting the remaining damage claims for completeness under the Rules as well.

For example, conversion under Idaho law is "a distinct act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with rights therein." *Peasley Transfer & Storage Co. v. Smith*, 976 P.2d 605, 616 (Idaho 1999); *see also U.S. Welding, Inc. v. Battelle Energy Alliance, LLC*, 728 F. Supp. 2d 1110, 1118 (D. Idaho 2010). Plaintiffs' Complaint repeatedly alleges that Defendants have converted "[P]artnership property," yet fails to identify with any degree of specificity what that property actually entails. *See, e.g.*, Compl., ¶ 38 (Docket No. 1). As the Court stated during oral argument, the dominion over chattel – not real property – is necessary to support a conversion claim. As currently pled, Plaintiffs' Complaint formulaically states a claim for conversion, but doesn't tether it to understood, identifiable property. Therefore, Plaintiffs' conversion claim is dismissed without prejudice. Plaintiffs are granted leave to amend their Complaint to address these concerns. Defendants' Motion to Dismiss is granted in this limited respect.

Further, "'[t]he substance of an action for unjust enrichment lies in a promise, implied by law, that a party will render to the person entitled thereto that which in equity and good conscience belongs to the latter.'" *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 979 P.2d 627, 640 (Idaho 1999) (quoting *Smith v. Smith*, 511 P.2d 294, 301 (Idaho 1973)). Unjust enrichment allows recovery where the defendant has received a benefit from the plaintiff that

**MEMORANDUM DECISION AND ORDER - 11**

would be inequitable for the defendant to retain without compensating the plaintiff for the value of the benefit. *See Vanderford Co., Inc. v. Knudson*, 165 P.3d 261, 271 (Idaho 2007). "[U]njust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable fo the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Id*. at 272 (citing *Aberdeen-Springfield Canal Co. v. Peiper*, 982 P.2d 917, 923 (1999)). Here, Plaintiffs Complaint alleges matter-of-factly that "[Defendants] received benefits conferred upon [them] at the expense of [Plaintiffs] through [their] wrongful use and misappropriation of partnership property" and that "[Defendants'] acceptance of those benefits, without full compensation to [Plaintiffs], is just and inequitable." Compl., ¶¶ 41-42 (Docket No. 1). As before, there is no clear definition of the nature of the benefit that undergirds Plaintiffs' unjust enrichment claim. *See supra*. At the same time, Plaintiffs *have* alleged that "the [P]artnership turned a profit for the past four to five years, but no money has been paid to [Plaintiffs]." Compl., ¶ 21 (Docket No. 1). Therefore, while Plaintiffs' unjust enrichment clam may be lacking certain particulars informing the claim in every respect, it is not so amorphous as to require its dismissal at this stage of the litigation. Therefore, Defendants' Motion to Dismiss is denied in this respect.

Finally, under Idaho law, the elements of trespass are: "(1) an invasion, (2) which interferes with the right of exclusive possession of the land, and (3) which is a direct result of some act committed by the defendant." *Kayser v. McClary*, 875 F. Supp. 2d 1167, 1195 (D. Idaho 2012). "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the

actor has the ability to remove it." Restatement (Second) of Torts § 161 (1965). In support of their trespass claim, Plaintiffs have alleged that Defendants "have built structures unrelated to [P]artnership business on [P]artnership land and have operated their cattle grazing business on [P]artnership land." Compl., ¶ 47 (Docket No. 1). This is sufficient to assert a claim for trespass under Idaho law. Therefore, Defendants' Motion to Dismiss is denied in this respect.

    1.    <u>Plaintiffs Have Sufficiently Alleged Diversity Jurisdiction as to the Citizenship Between Parties Requirement</u>

The Partnership, Defendants contend, is the real party in interest and an indispensable party for those damage claims involving Partnership property, such that its addition as a plaintiff to this action would destroy diversity jurisdiction and this Court's subject matter jurisdiction. *See* Mem. in Supp. of Mot. to Dismiss, pp. 2, 9-11 (Docket No. 7).

This argument fails because it parts ways with the express permission granted under RUPA for claims to be brought between partners to, *inter alia*, (1) enforce a partner's rights under Idaho Code §§ 53-3-401, 53-3-403, and 53-3-404 (notably, these are the same Code sections referenced within Plaintiffs' claim for violation of statutory duties/breach of fiduciary duty in Count II (*see supra*)) and, (2) enforce the rights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship. *See* I.C. § 53-3-405(b)(2),(3). Thus, at the very least, the Idaho Legislature's adoption of RUPA endorses Plaintiffs' ability to bring their violation of statutory duties/breach of fiduciary duty claim – a damages claim – against Defendants without naming the Partnership as a party. With that claim intact in its currently pled state (including the requisite amount in controversy (*see supra*)), diversity jurisdiction is satisfied. Plaintiffs (from Washington and Alaska respectively) and Defendants (from Idaho) are citizens from different states. *See* 28 U.S.C. § 1332(a)(1).

**MEMORANDUM DECISION AND ORDER - 13**

Again, when viewing Defendants' Motion to Dismiss as an all-or-nothing attempt to dismiss Plaintiffs' entire Complaint for lack of subject matter jurisdiction, the fact that Plaintiffs' violation of statutory duties/breach of fiduciary duty claim is properly pled necessarily undercuts that effort. But what about the other damage claims? Assuming Plaintiffs insist on these claims' inclusion in this action, must they be brought by the Partnership and, if so, must the Partnership be added to the case? The undersigned is not so convinced.

It is undisputed that *partnerships* may generally maintain actions against a partner "for a violation of a duty to the partnership, causing harm to the partnership." I.C. § 53-3-405(a). However, whether a *partner* may maintain an action against another partner for harms to the partnership is less clear. All partners in the Partnership have the ability to act on the Partnership's behalf and have management rights, which would augur in favor of the Plaintiffs' right to pursue such relief in this case. *See* I.C. § 53-3-301(1) (describing partners' role as agents of partnership); *see also* I.C. § 53-3-401(f) (guaranteeing each partner "equal rights in the management and conduct of the partnership business"). Such a reading helps explain the Official Comment to Idaho Code § 53-405 – "Actions by Partnership and Partners":

> [Section 405(b)] provides that during the term of the partnership, partners may maintain a variety of legal or equitable actions . . . . It reflects a new policy choice that partners should have access to the courts during the term of the partnership to resolve claims against the partnership and the other partners, leaving broad judicial discretion to fashion appropriate remedies. . . . .
>
> *Under subsection (b), a partner may bring a direct suit against the partnership or another partner for almost any cause of action arising out of the conduct of the partnership business. . . . . Since general partners are not passive investors like limited partners, RUPA does not authorize derivative actions . . . .*

I.C. § 53-405, cmt. 2 (emphasis added).

**MEMORANDUM DECISION AND ORDER - 14**

The Ninth Circuit has not considered whether such language unequivocally allows partners to bring partnership claims against another partner on behalf of the partnership – indeed case law on the issue in other jurisdictions is similarly lacking (as evidenced by the parties' briefing). In one case which has considered the issue – *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 14 A.3d 1193 (Md. App. 2011) – the Maryland Court of Special Appeals of Maryland had this to say:

> The appropriate question, then, is not whether a general partner may sue "derivatively," but whether minority general partners may bring partnership claims against another partner or a third party on behalf of the partnership. . . . .
>
> Sections 9A-401(g) and 9A-401(f) of the RUPA suggest that any partner may sue to enforce a partnership claim. Under § 9A-401(g), partners have a right to possess partnership property for partnership purposes. C.A. § 9A-401(g) ("A partner may use or possess partnership property only on behalf of the partnership."). The leading treatise on partnership law suggests that that provision "can reasonably be construed to permit any partner to enforce a partnership right in the interest of the partnership." Bromberg and Ribstein § 5.03(d) (citations omitted). Likewise, § 9A-401(f) can, according to the same treatise, "be reasonably read to mean that any partner can enforce a partnership obligation." *Id*. at § 5.03(b). This is because "[t]he enforcement of a partnership's rights in contract, tort, ownership, or otherwise is an aspect of the management and conduct of the partnership business." *Id*. Consequently all partners have qual ability to enforce those rights. *Id*.

*Wasserman*, 14 A.3d at 1215-16 (Md. App. 2011).[5]

The logic of the *Wasserman* court makes intuitive sense.[6] Still, this Court is reluctant to overlook and dismiss the apparent discrepancy in RUPA's statutory language between the types

---

[5] The statutes cited within *Wasserman* represent Maryland statutory law. However, because RUPA is a uniform law, these same sections apply under Idaho statutory law.

[6] As to the consent needed for a partner to act on the partnership's behalf concerning claims against another partner, the *Wasserman* court concluded that, under Maryland Code § 9A-401(j), the consent of all "disinterested" partners was required. *See Wasserman*, 14 A.3d at 1216 (acknowledging appellants' argument that "it would be ironic if § 9A-401(j) were construed to bar their claims against Mr. Kay, because that would effectively enable '[Mr.] Kay . . . [to say] to the court, 'Well, I took the money without the consent of my partners, but you can't come get me without the consent of all the partners.''").

**MEMORANDUM DECISION AND ORDER - 15**

of claims a partnership may bring and types of claims partners may bring (*see supra*). Perhaps this was intended to raise a legitimate distinction between the claims parties (either partners or the partnership) could pursue; perhaps not.

The quandary, however, need not be resolved here. Notwithstanding the issue surrounding whether certain of the damage claims are exclusively of the Partnership, the Partnership is not indispensable and, as a result, need not be joined in this action. Even if the Partnership is required under FRCP 19(a), its joinder is not "feasible" as it would defeat diversity jurisdiction. *See* Fed. R. Civ. P. 19(a)(1) ("A person who is subject to service of process *and whose joinder will not deprive the court of subject-matter jurisdiction* must be joined as a party if . . . .") (emphasis added). As such, the question remaining is whether the action should proceed among the existing parties or be dismissed in consideration of the factors outlined under FRCP 19(b). *See* Fed. R. Civ. P. 19(b).

All of the Partnership's partners are before the Court via this action. Accordingly, all the partners' interests, along with the Partnership's interests, are fully represented and/or can be adequately accounted for as the action progresses toward resolution. *See Hooper v. Wolfe*, 396 F.3d 744, 749 (6th Cir. 2005) ("The decisions of three other circuits support the conclusion that a limited partnership entity is not an indispensable party in a dispute between its partners, based on the commonsense notion that so long as the constituent partners are before the court, the partnership is not an indispensable party.") (citing *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1198-99 (3rd Cir. 1996) (so long as all partners are before court, limited partnership not indispensable party); *Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 303-04 (4th Cir. 1992) (same); *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 90-91 (2nd Cir. 1990) (same); *see also Schnabel v. Lui*, 302 F.3d 1023, 1030-31 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 16**

2002).⁷  Therefore, the Partnership is not indispensable and, consequently, does not need to be joined.  The parties' citizenship remains diverse, thus maintaining this Court's subject matter jurisdiction.  Defendants' Motion to Dismiss is denied in this respect.

### III.  ORDER

Based on the foregoing, it is HEREBY ORDERED that  Defendants' (1) Rule 12(b)(6) Motion to Dismiss Damage Claims; (2) Rule 12(b)(7) Motion to Dismiss Damage Claims; and (3) Rule 12(b)(1) Motion to Dismiss Claims for Dissolution of Partnership, Wind-Up, and Settlement of Partnership Accounts, and Constructive Trust (Docket No. 6) is GRANTED, in part, and DENIED, in part, as follows:

1.  The action is not dismissed for lack of subject matter jurisdiction.  In this respect, Defendants' Motion is DENIED; and

2.  Plaintiffs' claim for conversion is DISMISSED, without prejudice.  Plaintiffs may amend their Complaint to address the shortcomings as discussed herein.  In this limited respect, Defendants' Motion to Dismiss is GRANTED.

DATED:  **March 30, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

⁷ Defendants' reliance during oral argument on *Pozez v. Clean Energy Capital, LLC*, 2011 WL 1135896 (D. Ariz. 2011) is misplaced.  There, the partnership was not being dissolved (as is sought here) and all partners were not before the court (all partners are in this case).

**MEMORANDUM DECISION AND ORDER - 17**